FILED

2013 Dec-10  PM 04:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **COUNSEL FINANCIAL SERVICES LLC,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:11-CV-1051-RDP** |
| | } | |
| **E KIRKSEY WOOD, JR., et al.** | } | |
| | } | |
| **Defendants.** | } | |
| | | |
| **ARCHIE CLEVELAND LAMB,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:11-CV-1592-RDP** |
| | } | |
| **COUNSEL FINANCIAL SERVICES LLC,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

This matter is before the court on the Motion for Summary Judgment filed by Jo Ann Kanakis and Constantine Kanakis (collectively "Kanakises"). (Case No. 11cv1051 Doc. # 150; Case No. 11cv1592 Doc. # 38). The matter has been fully briefed. (Docs. # 157, 163).[1]

## I.     Relevant Facts

Plaintiff has stated a fraudulent transfer claim against the Kanakises related to property at 1228 Cedardell Lane, Birmingham, Alabama 35216 (the "Cedardell Property"). (Doc. # 47).

---

[1] All further docket entry cites will refer to the docket entries in Case No. 11cv1051).

A.      **Lamb's Bankruptcy**

On January 28, 2010, Archie Lamb filed a petition in the United States Bankruptcy Court for the Northern District of Alabama bearing case number 10-00465-TBB-7.  (Doc. # 150-1).  Andre` M. Toffel was appointed Trustee of the Archie Lamb Bankruptcy case.  (Doc. # 150-1).  On June 23, 2010, the Trustee filed a Report of No Distribution abandoning any unadministered assets and indicating that the case had been fully administered.  (Doc. # 150-1).  Counsel Financial Services, LLC ("CFC") filed no objection to the Trustee's Report.  (Doc. # 150-1).  The Trustee did not pursue any claim against Jo Ann Kanakis or Constantine Kanakis in the Archie Lamb Bankruptcy.  (Doc. # 150-1).

CFC first asserted its fraudulent transfer claim against the Kanakises in its Second Amended Complaint filed July 7, 2011.  (Doc. # 47).

B.      **The Cedardell Property**

On or about February 6, 2004, a  warranty deed purporting to transfer the Cedardell Property from Jo Ann Kanakis to Archie Lamb was executed and recorded. (Doc. # 150-4).  The warranty deed was executed by Bryan Peoples as attorney in fact for Jo Ann Kanakis.  (Doc. # 150-4).  Also on February 6, 2004, Jo Ann Kanakis executed a Power of Attorney in favor of Bryan Peoples to execute instruments "pertaining to the sale of certain real property in Jefferson County, Alabama." (Doc. # 157 at 25).  The Power of Attorney states that Jo Ann Kanakis is "of New Hanover County, North Carolina," and it was notarized in New Hanover, North Carolina by a New Hanover County, North Carolina notary.  (Doc. # 157 at 25-26).  The warranty deed states, "THE PROPERTY DESCRIBED HEREIN DOES NOT CONSTITUTE THE HOMESTEAD OF THE GRANTOR NOR HER SPOUSE."  (Doc. # 150-4).  The warranty deed also warrants that Jo Ann Kanakis is

"lawfully seized in fee simple of said premises" and that she has "a good right to sell and convey" the property.  (Doc. # 150-4).

Lamb listed the Cedardell Property as an asset on his personal financial statements as of April 1, 2007 (Doc. # 157 at 37) and December 31, 2007 ( Doc. # 157 at 40).  He also listed a mortgage on the Cedardell Property as a liability on these personal financial statements.  (Doc. # 157 at 38, 41).

On May 20, 2008, Lamb executed a quit claim deed conveying the Cedardell Property back to Jo Ann Kanakis.  (Doc. # 150-5).  This conveyance is the subject of CFC's fraudulent conveyance claim against the Kanakises.  (Doc. # 47).

On July 15, 2008, Jo Ann Kanakis executed a warranty deed conveying her interest in the Cedardell Property to herself and Connie Kanakis as Joint Tenants.  This warranty deed states, "THE SUBJECT PROPERTY IS THE HOMESTEAD OF GRANTOR AND SPOUSE."  (Doc. # 157 at 32).  Thereafter, on November 6, 2008, Connie Kanakis executed a quit claim deed conveying his interest in the Cedardell Property back to Jo Ann Kanakis.  (Doc. # 157 at 35).

In support of their Motion for Summary Judgment, Jo Ann and Connie Kanakis have submitted affidavits which assert that the Cedardell Property has been their homestead since 1980. (Docs. # 150-6 and 150-7).

## II.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking

for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* 249.

## III. Analysis

The Kanakises' Motion for Summary Judgment is based upon two grounds. First, the Kanakises assert that Plaintiff lacks standing to pursue this action. Second, the Kanakises contend that it is undisputed that the Cedardell property which is the subject to CFC's fraudulent transfer claim has continuously been their homestead and was not properly conveyed to Lamb pursuant to Alabama Code § 6-10-3. That is, the Kanakises claim Lamb could not have fraudulently transferred what was not his to begin with. (Doc. # 150).

4

**A.      Plaintiff Has Standing To Assert This Claim**

The Kanakises rely heavily on the case of *In re Robert Leopard*, Northern District of Alabama Bankruptcy Case No. 12-00113-TOM-7, and argue that this court should either follow Judge Mitchell's opinion in that case or await a ruling after her decision is appealed to this court. (Doc. # 163).  However, that case is inapposite.

"Whether a party has standing to assert the jurisdiction of a federal court is a question of federal law, and 'standing is to be determined as of the commencement of suit.'" *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (11th Cir. 2003) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n. 5 (1992).  In *In re Robert Leopard*, the fraudulent transfer claim was filed while the bankruptcy case at issue was ongoing.  (Doc. # 163-1).  Thus, it is correct that Alliant Bank in *In re Robert Leopard* did not have standing to assert the claim under the requirements of *SouthTrust Bank, N.A. v. Jackson* (*In re Dur Jac Ltd.*), 254 B.R. 279 (Bankr. M.D. Ala. 2000).  However, in this case, Plaintiff filed its fraudulent transfer claim *after* Lamb's bankruptcy case had been fully administered.  This fact materially distinguishes this case from *In re Robert Leopard*.

The principles of standing to assert fraudulent conveyance claims relative to bankruptcy filings were summarized by the United States Bankruptcy Appellate Panel of the Ninth Circuit in *In re Milton Lee Vandevort*, 2009 WL 7809927 (9th Cir. BAP 2009):

> "Under Code § 544(b), the filing of a bankruptcy petition does not strip creditors of state-created rights to avoid transfers, it merely shifts that right to the creditors' representative." 4 *Norton Bankruptcy Law & Practice* § 30.06, at 12 (1988). The mere fact that Section 544(b) gave the Chapter 7 Trustee standing in a representative capacity to assert the Bank's claim for a period of time did not act to destroy the Bank's rights. *When a case is closed in which the trustee did not pursue a fraudulent conveyance cause of action pursuant to Section 544(b),* such as happened in the Chabots' case*, the right to pursue the state law cause of action reposes once again in whomever is able to assert it.* [*City Nat'l Bank v. Chabot (In re Chabot),* 100 B.R.

18, 23 (Bankr. C.D. Cal.1989)]. In other words, *the filing of a bankruptcy petition does not strip a creditor of standing to pursue a fraudulent transfer action if the trustee abandons it*, ... . Rather, the creditor is stayed from prosecuting the claim and unless the trustee opts to intervene or to file his or her own fraudulent transfer action, *the creditor may pursue the cause of action upon closing of the bankruptcy estate* (unless the matter has become moot because the creditor's claim has been discharged).

*In re Milton Lee Vandevort*, 2009 WL 7809927 at *6 (quoting *City Nat'l Bank v. Chabot (In re Chabot)*, 100 B.R. 18, 23 (Bankr. C.D. Cal.1989)) (original emphasis removed, emphasis added).

Similarly, in *Hatchett v. United States*, 330 F.3d 875, 886 (6th Cir. 2003), the Sixth Circuit held that "[t]hough the trustee has the exclusive right to bring an action for fraudulent conveyance during the pendency of the bankruptcy proceedings, the Bankruptcy Code does not extinguish the right of [a creditor] to bring a state law action for fraudulent conveyance after the debtor receives a discharge in bankruptcy. ... Accordingly, because the bankruptcy proceedings are over, the [creditor] has standing to assert its fraudulent conveyance theory." *Id.* The Fourth Circuit has also explicitly held that until there is an abandonment by the trustee of a fraudulent conveyance claim, an individual creditor has no standing to pursue it. *National American Ins. Co. v. Ruppert Landscaping Co., Inc.*, 187 F.3d 439, 441 (4th Cir. 1999). Conversely, it follows that once the fraudulent conveyance claim is abandoned by the trustee, an individual creditor does have such standing. Because the parties have not pointed the court to any binding precedent on this issue in this circuit, and because the court has not found any on its own, the court is persuaded that it should follow the well-reasoned decisions of the Fourth, Sixth and Ninth Circuits. Here, the Trustee in Lamb's bankruptcy abandoned any fraudulent conveyance claim against the Kanakises and the bankruptcy was fully administered at the time Plaintiff brought its claim. Plaintiff now has standing to assert the fraudulent conveyance

6

claim.  Therefore, the Kanakises' Motion for Summary Judgment on this ground is due to be denied.

**B.    Was There a Failure to Comply with Alabama Code § 6-10-3?**

Alternatively, the Kanakises argue that there can be no fraudulent conveyance action against them because the Cedardell Property was never properly conveyed to Lamb in that the deed from Jo Ann Kanakis to Lamb failed to comply with section 6-10-3.  (Doc. # 150).  That section provides that a deed conveying a homestead is invalid unless it is signed by both spouses.  The Kanakises have submitted affidavits stating that the Cedardell Property was their homestead at all times since 1980, and on this basis argue that the deed from Jo Ann Kanakis to Lamb does not comply with § 6-10-3.  (Doc. # 150).  Plaintiff argues that the Kanakises' own documents create a question of fact on the issue of whether the Cedardell Property was the Kanakises' homestead or, alternatively, it should be entitled to do discovery on this issue.  (Doc. # 157).

The Kanakises' affidavits cannot be considered alone.  Other record evidence shows that, in a February 6, 2004 Power of Attorney, Jo Ann Kanakis gave Bryan Peoples the authority to execute instruments "pertaining to the sale of certain real property in Jefferson County, Alabama" on her behalf.  (Doc. # 157 at 25).  That Power of Attorney states that Jo Ann Kanakis is "of New Hanover County, North Carolina," and was notarized in New Hanover, North Carolina by a New Hanover County, North Carolina notary.  (Doc. # 157 at 25-26).  Peoples in fact executed a warranty deed on behalf of Jo Ann Kanakis as her attorney in fact purporting to transfer the Cedardell Property to Archie Lamb.  (Doc. # 150-4).  The warranty deed executed by Peoples on behalf of Jo Ann Kanakis states, "THE PROPERTY DESCRIBED HEREIN ***DOES NOT*** CONSTITUTE THE HOMESTEAD OF THE GRANTOR NOR HER SPOUSE."  (Doc. # 150-4) (emphasis added).  The warranty deed

also warrants that Jo Ann Kanakis is "lawfully seized in fee simple of said premises" and that she has "a good right to sell and convey" the property.  (Doc. # 150-4).

This evidence is sufficient to create an issue of fact as to whether the Cedardell Property was the Kanakises' homestead at the time the warranty deed was executed.  Without engaging in impermissible fact finding, on the present record, the court cannot make the determination that the transfer was ineffective under section 6-10-3 as a matter of law.  Therefore, the Kanakises Motion is due to be denied on this ground, also.

**IV.    Conclusion**

For the foregoing reasons, the Motion for Summary Judgment filed by Jo Ann Kanakis and Constantine Kanakis (Case No. 2:11-cv-1051-RDP Doc. # 150; Case No. 2:11-cv-1592-RDP Doc. # 38) is due to be denied.  A separate order will be entered**.**

**DONE** and **ORDERED** this _____10th_____ day of December, 2013.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE